## Jacobs et ux. v. Johnson.

(Decided February 5, 1929.)

W. T. COLE and DYSARD & MILLER for appellants.

THOMAS E. NICKEL for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE McCANDLESS—Reversing.

Prior to his death, W. H. Jacobs owned a small tract of land in Greenup county. After his death in 1912, this land was partitioned among his heirs at law. Lot No. 5

was at the southern end of the farm. North of and binding on No. 5 were lots Nos. 3 and 4. At the south end of the line between lots No. 3 and No. 4, and where they joined lot No. 5, a common corner was established, known in the record as "a stake in the barn lot." Lot No. 2 lay to the north of lot No. 4, and lot No. 1 to the north of lot No. 2.

In course of time Ed Jacobs and his wife, Ruth Jacobs, became the owners of lots Nos. 4 and 5, and on November 28, 1922, they sold and conveyed to Harmon Johnson the following described boundary of land: "Lot No. 4. Beginning at a stake in Harrison Jacob's line, corner with Lot No. 2 deed to Aaron Jacobs; thence with H. Jacobs' line S 4 W 47 poles to a stake; thence E 25 2/5 poles to a stake in barn lot; N 4 E 47 poles to a stake in line of Lot No. 2; thence W 25 2/5 poles to the beginning, containing 7½ acres."

At the time of this conveyance there was a line of fence running east and west along the apparent north line of lot No. 5, passing a stake in what was formerly the barn lot. Johnson under his purchase took possession north of this line. Later he concluded that his southern line was some distance south of this fence and began removing the fence, whereupon Ed and Ruth Jacobs brought suit to quiet their title and recover damages for the trespass. By answer and counterclaim Johnson set up title to the strip of land south of his inclosure. Subsequently Johnson brought an independent action against Ruth and Ed Jacobs to quiet his title to the same strip. The two suits were consolidated and a survey ordered of lots 4 and 5. Acting under this order, the surveyor undertook to survey lot No. 4. There was no stake at the beginning or northwest corner of lot No. 4. The surveyor undertook to locate this by beginning at a point supposed to be, though not established as, the N. W. corner to lot No. 1, and ran south along the west line of lots Nos. 1 and 2, according to the calls of the deeds thereto, and in this way fixed a beginning corner for No. 4. From this point he ran the lines of that lot according to the calls of the deed, and marked the corners with stones. As thus fixed, the south line of lot No. 4 is something like 100 feet south of the line claimed by Jacobs. He also ran the lines of lot No. 5 according to Jacobs' deed, and fixed the north line of it still farther south from the south line of No. 4 as established by him, leaving a

vacant strip between them. Much evidence was taken, it being established without contradiction that the stake in the barn lot referred to in the deeds is still standing at a point in the former barn lot and in the line of fence that divided the lots at the date of the survey. It is further shown by all of the parties to the division that this stake had always been accepted as a corner to lots Nos. 3, 4, and 5; one of the witnesses who so testified being Mrs. Boggess, who owned lot No. 3, and the surveyor admits seeing this stake at the time he made the survey and says it was then quite an old stake, though he does not explain why he disregarded it.

If it be assumed that the location of lot No. 4 according to the original survey is of controlling force, it must be admitted the surveyor's report is open to question. It is well settled that in locating boundaries, courses and distance must yield to known objects. If the surveyor had started at the stake in the barn lot, he could easily have established the boundary of lot No. 4 by either following or reversing the calls in the deed, and this would have excluded the strip in controversy. However, we do not think it essential to establish the original boundaries of these lots. True, the land conveyed Johnson is referred to as lot No. 4; and if the description had gone no further, it would be necessary to establish such boundaries. But the description continues and calls for a definitely described boundary, which excludes the land in controversy. Not only that, but one of the corners in the disputed line was well established and marked by a stake, and at the time of the conveyance the land conveyed was inclosed by a fence running from that stake along the line described in deed. Under such circumstances, the calls in the deed, rather than the reference to the lot, must control, and Johnson's south line may be established by beginning "at the stake in the barn lot" and reversing the second call in his deed. Hale v. Swift, 63 S. W. 288, 23 Ky. Law Rep. 497. The effect of which is to show that he has not title to the land in dispute.

Wherefore the judgment is reversed, and cause remanded for proceedings consistent with this opinion.

Whole court, except Judge WILLIS, sitting.